**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| IN RE:<br><br>BILLY LEE LONG,<br><br>       Debtor. | CHAPTER 13<br>CASE NO. 26-21073-JRS |
| FITTS PROPERTIES, INC.,<br>ITS SUCCESSORS AND/OR ASSIGNS,<br>      Movant,<br>vs.<br><br>BILLY LEE LONG, Debtor,<br>LISA LONG, Co-Debtor,<br>NANCY J. WHALEY, Trustee,<br>      Respondents. | CONTESTED MATTER<br><br><br>JUDGE: JAMES R. SACCA |

## <u>NOTICE AND ASSIGNMENT OF HEARING</u>

PLEASE TAKE NOTICE that a motion for relief from the automatic stay, co debtor stay, and IN REM relief has been filed in the above-styled case seeking orders for relief from the automatic stay and co debtor stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion for Relief from Stay, the calendar call for which will be at **9:00 A.M.,** on the **25th** day of **August,** 2026, in Courtroom 103, Federal Building, 121 Spring Street, SE, Gainesville, GA 30501, which may be attended in person or via the Court's Virtual Hearing Room. Except as explained in the hearing procedures on Judge Sacca's Chambers webpage, any matter held ready at the calendar call for the Court to hear shall be heard later that day in person at either 11 a.m. or 1 p.m. as mutually requested by the parties in the Courtroom listed above.

You may join the Virtual Hearing Room through the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. If the parties do not mutually agree to have the matter heard in person at 11 am. (or such other time agreed to by the parties and approved by the Court, such as 11:30 a.m. that day), the matter will be heard in person at 1 p.m. that day.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| IN RE:<br><br>BILLY LEE LONG,<br><br>       Debtor. | CHAPTER 13<br>CASE NO. 26-21073-JRS |
| FITTS PROPERTIES, INC.,<br>ITS SUCCESSORS AND/OR ASSIGNS,<br>       Movant,<br>vs.<br><br>BILLY LEE LONG, Debtor,<br>LISA LONG, Co-Debtor,<br>NANCY J. WHALEY, Trustee,<br>       Respondents. | CONTESTED MATTER<br><br><br>JUDGE: JAMES R. SACCA |

## <u>MOTION FOR RELIEF FROM STAY</u>

COMES NOW, FITTS PROPERTIES, INC., its Successors and/or Assigns, a creditor in the above-styled Chapter 13 proceeding, and respectfully moves this Honorable Court for an Order lifting the automatic and co-debtor stay regarding the real property upon which holds a security interest and shows in support thereof the following:

1.    This is a Motion under 11 U.S.C. Section 362(d)(4) of the Bankruptcy Code for IN REM relief from the automatic stay.

2.    Movant is the holder of a Security Deed, executed by Debtors, which describes certain real property owned by Debtors; a copy of the Security Deed to Movant is attached hereto and marked Exhibit "A". Said real property is security for a Note held by Movant, and commonly known as Skeenah Gap Road, Suches, Georgia 30572 and Rock Creek Circle, Blue Ridge, Georgia 30513 (hereinafter "Collateral.")

3.      Debtor filed this Chapter 13 petition on July 6, 2026. The maturity date under the Note was October 28, 2024, and the total payoff amount as of July 21, 2026, is $316,087.15. The tax assessed value is $147,000.00, and thus there is no equity in the Collateral.

4.      On November 3, 2025, co-debtor, Lisa J. Long, filed Chapter 13 case, 25-21579-jrs, which stopped a non-judicial foreclosure sale scheduled by Movant for the following day.

5.      The co-debtor filed a motion to extend time to file schedules and Chapter 13 Plan on November 17, 2025. That Motion was Granted on November 19, 2025.

6.      The Case was Dismissed on December 8, 2025, for the Debtor's Failure to Correct Filing Deficiency.

7.      The property was advertised for a non-judicial sale for failure to pay the obligation on the Note.

8.      Co-Debtor, Lisa Jane Long, filed Chapter 13 case, 26-20311-jrs, on March 3, 2026, which again stopped a non-judicial sale scheduled by Movant for the same day. The filing of this case was the second within a twelve-month period.

9.      The co-debtor filed a motion to extend time to file schedules and Chapter 13 Plan on March 18, 2026, which was withdrawn on April 14, 2026.

10.      Lisa Jane Long did not appear at her Section 341 Meeting of Creditors on April 10, 2026.

11.      The case was dismissed on April 17, 2026, for failure to correct filing deficiency. Accordingly, Lisa Jane Long would not have the benefit of an automatic stay should she file another case prior to November 2, 2026. 11 U.S.C. Section 362 (c)(4).

12.     The property was advertised for a July 7, 2026, non-judicial foreclosure sale for failure to pay the obligation on the Note.

13.     The debtor, Billy Lee Long, filed the instant Chapter 13 case on July 6, 2026, to stop the scheduled foreclosure sale by Movant for the following day.

14.     The debtor filed a motion to extend time to file schedules and Chapter 13 Plan on July 16, 2026. That Motion was Granted on July 17, 2026.

15.     To date, neither the debtor or co-debtor has filed a plan, schedules, or a Statement of Financial Affairs. 11 U.S.C. Sections 521 and 1321.

16.     During the debtor and co-debtor's cases, no payments have been made to Movant.

17.     As a result of maturity of the loan and non-payment, Debtors are in default of the Note and Security Deed and Movant desires to exercise its state law rights to conduct a non-judicial foreclosure sale of the Property and if such Property is sold back to Movant, then to exercise its state law rights to dispossess Debtors and their personal property from the Property.

18.     Movant is not adequately protected and hereby shows that there is cause for relief from the stay, as (i) the Debtors have failed to tender amounts due under the Note and Security Deed, (ii) the Debtors continue to be in default of the Note and Security Deed, (iii) the Movant lacks adequate protection for its interest in the Property as discussed above as payments have not been made, and (iv) the Movant is unable to conduct a non-judicial foreclosure sale of the Property or dispossess the Debtor from the Property because of the stay. 11 U.S.C. § 362(d)(1).

19.     Relief from the stay is also appropriate because the Debtors do not have equity in the property and the Property is not necessary for an effective reorganization.

20.     To date, neither the Debtor or Co-Debtor have filed a plan, schedules, or Statement of Financial Affairs in any of their three bankruptcy cases within the prior twelve months.

21.     For the above and foregoing reasons, Movant asserts sufficient cause exists to waive the requirement of Bankruptcy Rule 4001(a)(4), so that Movant may immediately enforce and implement an order granting relief from the automatic stay.  Movant further asks that upon entry of an order granting relief from stay, such order state that Debtor's plan is modified to no longer provide for the payment of Movant's claim pursuant to Section 1322(b)(5) and that Trustee shall cease funding of Movant's claim until further notice from the Court.

22.     Because the Security Deed so provides, Debtor is responsible for Movant's attorney's fees in pursuing legal actions such as this Motion.

23.     Movant requests it be permitted to exercise all rights and remedies with respect to the Security Deed and underlying debt and to contact the Debtors via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements, or foreclosure-related activities.

**WHEREFORE**, the Movant prays for an Order relieving it from the automatic stay of 11 U.S.C. Sections 362 and 1301, authorizing the Movant to proceed with all state law rights and remedies with respect to the Security Deed and underlying debt, including recovering possession of the Collateral and undertaking foreclosure and dispossessory actions; for reasonable attorney's fees and costs; that upon entry of an order granting relief from stay, such order state that Debtor's plan is modified to no longer provide for the payment of Movant's claim pursuant to Section 1322(b)(5) and that Trustee shall cease funding of Movant's claim until further notice from the Court; that Movant, at its option, be permitted to contact Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan

modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements, or foreclosure-related activities; for waiver of Bankruptcy Rule 4001(a)(4), and for such other and further relief as this Court deems just and equitable.

Respectfully submitted this 22nd day of July, 2026.

/s/ Christie Hennings
**Christie Hennings**
Georgia Bar No. 298655
*Attorney for FITTS PROPERTIES, INC.*

**CB LEGAL, LLC**
10882 Crabapple Road
Roswell, GA 30075
(678) 443-6040 (phone)
chennings@cblegal.law

CERTIFICATE OF SERVICE

I hereby certify that on **22nd** day of **July, 2026**, I electronically filed the foregoing, *Motion for Relief from Stay and Notice of Hearing* using the Bankruptcy Court's Electronic Case Filing program:

Jeffrey M. Heller                                              Nancy J. Whaley
J.M. Heller Attorney at Law                          Standing Chapter 13 Trustee

I further certify that on this day I caused a copy of this document to be served via *United States First Class Mail, with Adequate Postage Prepaid* on the following parties at the address shown for each.

Billy Lee Long                                              Lisa Long
247 Rock Creek Circle                              247 Rock Creek Circle
Blue Ridge, GA  30513                              Blue Ridge, GA  30513

                                                   Respectfully submitted by,

                                                   */s/ Christie Hennings*
                                                   **Christie Hennings**
                                                   Georgia Bar No. 298655
                                                   *Attorney for FITTS PROPERTIES, INC.*

**CB LEGAL, LLC**
10882 Crabapple Road
Roswell, GA 30075
(678) 443-6040 (phone)
chennings@cblegal.law

Exhibit A

# PROMISSORY NOTE

| August 28, 2024 | Blue Ridge | Georgia |
|---|---|---|
| Date | City | State |

Address and location of property that serves as security for Note:
**11.50 acres Skeenah Gap Road Suches, Georgia 30572 and Lot 25 & 26 Rock Creek Road Blue Ridge, Georgia 30513**

## 1. BORROWERS PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $254,434.32 (this amount is called principal), plus the origination fee in the amount of $45,000.00, to the order of the Lender.

The Lender is **Fitts Properties, Inc.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder.

## 2. INTEREST

Interest will **NOT** be charged on unpaid principal.  The sum of $45,000.00 shall be paid to the Lender as an Origination Fee from the Borrowers and included in the final loan payment.  The final loan payment includes the balance of the balloon payment, origination fees, and any additional fees, if applicable, based on the terms of this Agreement.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make one balloon payment within 61 days of the date of this Note in the amount of $299,434.32.

If on, **October 28, 2024**, I still owe amounts under this Note, I will pay those in full on that date, which is called the maturity date.

I will make my payment to **Fitts Properties, Inc.** located at 3354 East First Street Blue Ridge, Georgia 30513, or if at a different place if required by the Note Holder.

## 4. BORROWERS RIGHT TO PREPAY

I have the right to make payments at any time before they are due.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceeding the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded the permitted limits will be refunded to me.  The Note Holder may choose to make this refunded by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces principal the reduction will be treated as a partial prepayment.

## 6. BORROWERS FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **10 calendar days** after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10%** of our overdue payment of interest.  I will pay this

late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not paid and all the interest that I owe on the amount. That date must be at least 30 days from the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as above described, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holders Costs and Expenses**

If the Note Holder has required me to pay immediately in full as above described, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys fees.

## 7. GIVING NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the mailing address above or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if we are given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor or surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligation of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of use together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 9. WAIVERS

I, and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. Presentment means the right to require the Note Holder to demand payment of amounts due. Notice of dishonor means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. USURY SAVINGS CLAUSE

Notwithstanding any other provision herein, the aggregate interest rate charged with respect to any of the Loans, including all charges or fees in connection therewith deemed in the nature of interest under applicable law shall not exceed the Highest Lawful Rate. If

the rate of interest (determined without regard to the preceding sentence) under this Agreement at any time exceeds the Highest Lawful Rate, the outstanding amount of the Loans made hereunder shall bear interest at the Highest Lawful Rate.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the security instrument) dated the same date as this Note, protects the Note Holder from possible losses which might result if we do not keep the promises which I make in this Note. That security instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower:** If all or part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lenders prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by lender if exercise is prohibited by Federal Law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

*WITNESS THE HAND(S) and SEAL(S) OF THE UNDERSIGNED.*

Billy Lee Long a/k/a Billy L. Long

Lisa J. Long

Type: SD
Kind: SECURITY DEED
Recorded: 9/4/2024 4:01:00 PM
Fee Amt: $25.00  Page 1 of 8
Fannin Co. Clerk of Superior Court
DANA CHASTAIN Clerk of Courts

Participant ID: 7178086017

# BK 1616  PG 744 - 751

Doss & Associates
Attorneys at Law, LLC
710 West First Street
Post Office Box 1277
Blue Ridge, Georgia 30513

**Tax Parcel Identification Number: 0016 012C/0019 A 025**

**Return to: Doss & Associates Attorneys at Law, LLC**

**Recording requested by: Fitts Properties, Inc.**

**Date of Document: August 28, 2024**

**Loan Amount: $254,434.32**

**Loan Maturity Date: October 28, 2024**

**Intangible Recording Tax: 0.00  This loan is for 61 days so there is no intangible taxes collected. O.C.G.A. 48-60-60**

**Borrower (Grantor): Billy Lee Long a/k/a Billy L. Long and Lisa J. Long**

**Grantee's Name and Address: 3354 East First Street Blue Ridge, Georgia 30513**

**Title(s) of Document: Deed to Secure Debt**

— 1 —

After recording, please return to
DOSS & ASSOCIATES
ATTORNEYS AT LAW, LLC
710 West First Street
Post Office Box 1277
Blue Ridge, Georgia 30513
(706) 632-2083
**************************Space above intended for recording purposes only***************

### *DEED TO SECURE DEBT*

STATE OF GEORGIA
COUNTY OF FANNIN

**THIS INDENTURE**, Made this the 28th day of August, 2024 by Billy Lee Long a/k/a Billy L. Long and Lisa J. Long, whose address is 247 Rock Creek Circle Mineral Bluff, Georgia 30559, and whose mailing address is 247 Rock Creek Circle Mineral Bluff, Georgia 30559, as parties of the first part, hereinafter called Grantor, and Fitts Properties, Inc., Lender, whose physical and mailing address is 3354 East First Street Blue Ridge, Georgia 30513, as party of the second part, hereinafter called Grantee.

**WITNESSETH,** That Grantor, for and consideration of the sum of Two Hundred Fifty Four Thousand Four Hundred Thirty Four Dollars & 32/100 ($254,434.32) in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, its successors and assigns, as security for payment of the indebtedness described below, the following described property, to wit:

**ALL THAT TRACT OR PARCEL OF LAND lying and being a part of Land Lot No. 155 of the 7th District and 1st Section of Fannin County, Georgia and being more particularly described as follows:**
**BEGINNING at the iron pin set South 83° 59' West, a distance of 1,553.3 feet from the common corner of Land Lot No. 155, 156, 169 & 170; thence running North 52° 22' West, a distance of 332.1 feet to a power pole; thence North 52° 22' West, a distance of 8.8 feet to a point; thence North 22° 56' East, a distance of 255.5 feet to a point; thence North 19° 42' East, a distance of 549.7 feet to a point at the Eastern end of a culvert; thence South 71° 50' East, a distance of 387.2 feet along the center line of a creek branch to a point; thence South 16°21' East, a distance of 138.8 feet along the centerline of the creek branch to a point at the intersection of a creek branch and a fence; thence South 74° 24' East, a distance of 166.4 feet along the fence to a point in the centerline of Skeenah Creek; thence South 16° 9' West, a distance of 162.7 feet along the centerline of Skeenah Creek to a point; thence South 30° 0' West, a distance of 84.4 feet along the centerline of Skeenah Creek to a point; thence South 17° 52' West, a distance of 126.6 feet to the centerline of Skeenah Creek to a point; thence South 12° 31' West, a distance of 192.3 feet along the centerline of Skeenah Creek to a point; thence South 39° 55' West, a distance of 72.3 feet along the centerline of Skeenah Creek to a point; thence North 73° 25' West, a distance of 72.3 feet along the centerline of Skeenah Creek to a point; thence North 73° 25' West, a distance of 60.7 feet along the centerline of Skeenah Creek to a point; thence North 81° 47' West, a distance of 106.2 feet along the centerline of Skeenah Creek to a point; thence South 86° 37' West, a distance of 93.4 feet along the centerline of Skeenah Creek to a point; thence South 52° 58' West, a distance of 107.4 feet along the centerline of Skeenah Creek to a point; thence South 16° 01' West, a distance of 43.7 feet along the centerline of Skeenah Creek to a point; thence North 52° 22' West, a distance of 16.0 feet to the POINT OF BEGINNING.**
**THIS CONVEYANCE IS MADE SUBJECT TO and together with the right of ingress and egress, all covenant, easements, restrictions, rights-of-way, zoning, local ordinances, and**

– 2 –

subdivision regulations as set forth in said plat of survey or as appearing of record.

THE ABOVE DESCRIBED PROPERTY is the same property that was conveyed from Angela Gail Helton, individually, and as Executor of the Estate of Shirley Lee Long to Billy Lee Long by Executor's Deed Joined by Devisees dated June 15, 2023. Said deed is recorded in Deed Book 1560, Pages 303-307, in the Office of the Clerk of Superior Court of Fannin County, Georgia.

Map/Parcel No. 0016 012C

Skeenah Gap Road Suches, Georgia 30572

and;

ALL THAT TRACT OR PARCEL OF LAND lying and being a part of Land Lot No. 259, 260, 296, 281 & 282 of the 7th District and 1st Section of Fannin County, Georgia, and being more particularly described as Subdivision Lot No. 25, containing 1.4 acres of land, more or less, and Subdivision Lot No. 26, containing 3.4 acres of land, more or less, as shown on a plat of survey by E.M. Smith, G.R.L.S. No. 923, dated March 16, 1970 and being recorded in Plat Book 4, Page 228, in the Office of the Clerk of Superior Court of Fannin County, Georgia. Pursuant to O.C.G.A. 44-2-28, reference is hereby made to said recorded plat of survey for the purpose of incorporating same herein for a more complete metes and bounds description of the property herein conveyed.

THIS CONVEYANCE IS MADE SUBJECT TO and together with the right of ingress and egress, all covenant, easements, restrictions, rights-of-way, zoning, local ordinances, and subdivision regulations as set forth in said plat of survey or as appearing of record.

THE ABOVE DESCRIBED PROPERTY is the same property conveyed from Howard E. Long and Shirley L. Long to Billy L. Long and Lisa J. Long by Warranty Deed (Life with Remainder to Survivor) dated April 25, 2001. Said deed is recorded in Deed Book 397, Page 609, in the Office of the Clerk of Superior Court of Fannin County, Georgia.

Map/Parcel No. 0019 A 025

Rock Creek Circle Blue Ridge, Georgia 30513

TO HAVE AND TO HOLD all of Grantor's right, title, and interest, in and to said real estate, with all of the appurtenances, unto said Grantee, its successors and assigns, forever in fee simple, including all of Grantor's right, title, and interest in and to the following:

A. All buildings, structures and other improvements now or hereafter located on the property hereinbefore described, or any part and parcel thereof; and

B. All minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on said property or under or above the same or any part or parcel thereof; and

C. All and singular the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel thereof; and

D. All machinery, apparatus, equipment, fittings, fixtures, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, and articles of personal property of every kind and nature whatsoever (hereinafter collectively called "Equipment"), now or hereafter located in, upon or under said property or any part thereof and used or usable in connection with any present or future operation of said property and now owned or hereafter acquired by Grantor, including, but without limiting the generality of the foregoing, all heating, air-conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing; lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating and communications apparatus; boilers, ranges, furnaces, oil burners or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; furniture and furnishings in commercial, institutional and industrial buildings; together with all additions thereto and replacements thereof Grantor hereby agreeing with respect to all

– 3 –

additions and replacements to execute and deliver from time to time such further instruments as may be requested by Grantee to confirm the conveyance, transfer and assignment of any of the foregoing).

And Grantor hereby warrants title of said property unto Grantee, its successors and assigns, against the lawful claims of all persons whomsoever.

No release of any part of the property herein described or extension of all or any part of the indebtedness hereby secured, shall affect the personal liability of any person upon the indebtedness hereby secured, nor the priority of this instrument.

This conveyance is to be construed as a deed passing title not as a mortgage and is made and intended to secure:

**ONE PROMISSORY NOTE DATED THE 28TH DAY OF AUGUST, IN THE YEAR OR OUR LORD, 2024 IN THE PRINCIPAL AMOUNT OF $254,434.32 BEING DUE AND PAYABLE IN ONE BALLOON PAYMENT IN THE AMOUNT OF $299,434.32, BEING DUE AND PAYABLE ON OR BEFORE OCTOBER 28, 2024, WHICH IS THE MATURITY DATE.  THIS BALLOON PAYMENT INCLUDES AN ORIGINATION FEE IN THE AMOUNT OF $45,000.00.**

**ADDITIONAL CONDITION TRIGGERING DEFAULT:  BORROWERS SHALL PAY THE LENDER OF THE 2ND MORTGAGE (SKYBEAM CAPITAL PARTNERS, LLC) ON THE 11.50 ACRES SKEENAH GAP DRIVE SUCHES, GEORGIA 30572 BY CLOSE OF BUSINESS (5PM) ON SEPTEMBER 6, 2024 AND PROVIDE TO FITTS PROPERTIES, INC PROOF OF PAYOFF.**

(II)  Such additional sums as may, from time to time, hereafter be advanced by Grantee to Grantor, whether same be evidenced by notes or otherwise, and irrespective of amounts, for any purpose and at any time before the cancellation of this deed; and

(III) any renewals, extensions, or consolidations of any of the debts, notes, advances or indebtedness specified in sub-paragraphs I and II, above, and the obligations and the performance of the covenants and agreements of Grantor to Grantee contained or referred to herein; and

(IV) any renewal or extension of any part or all of said indebtedness, and any and all other indebtedness which said Grantor(s) or either or any one or more of them may now or hereafter owe said Grantee, whether as maker, security, guarantor, endorser, or otherwise, and if any portion of said indebtedness or any provision of this instrument shall be held invalid for any reason, it is the intent of the parties that such portion shall be severable, and such invalidity shall not affect the remainder of said debt or instrument.

The word "note" as used hereinafter shall be construed to mean the note specifically described in subparagraph I above; the words "secured debt" shall be construed to mean all of the debts, notes, advances or indebtedness (together with interest thereon and costs of collection including fifteen per centum [15%] attorney's fees) specified in sub-paragraph I, II, III, and IV and secured hereby. Grantor, acting by and through their duly authorized representative(s) covenants and agrees:

**1.** (a)That it will promptly pay the principal of and interest on the indebtedness evidenced by the said note, at the times and in the manner therein provided.

(b)That it will pay the secured debt as provided for in the instrument or instruments evidencing same, or in the absence of such provisions, as required by Grantee.

**2.** That, together with, contemporaneously with and in addition to the payments of principal and interest payable under the terms of the note secured hereby, it will pay to Grantee upon Grantee's request, until the secured debt is fully paid, the following sums: A sum equal to the premiums that will next become due and payable on policies of fire, windstorm and other hazard insurance covering these premises, plus taxes and assessments next due on the property hereinabove described (all as estimated by Grantee) less all sums already paid therefore divided by the number of months to

— 4 —

elapse before one month prior to the date when such premiums, taxes and assessments will become delinquent, such sums to be held by Grantee in trust to pay said premiums, taxes and assessments.

**3.** All payments mentioned in paragraphs numbered 1 and 2 above shall be added together, and the aggregate amount thereof shall upon Grantee's request, be paid by Grantor each month in a single payment to be applied by Grantee to the following items in the order set forth:

(I) Interest on the secured debt; and

(II) Amortization of the principal of the secured debt; and

(III) Taxes, assessments, fire, windstorm and other hazard insurance premiums. Any deficiency in the amount of such aggregate monthly payment shall, unless made good by Grantor within thirty days of its due date, constitute a default under the terms of this deed.

**4.** That Grantor shall further pay to the Grantee upon request by Grantee all installment payments as they become due under the terms of any note or obligation secured by a deed to secure debt to which this instrument is subordinate. Grantee shall credit such payments to an escrow account maintained by Grantee and shall pay the aforesaid obligations of the Grantor from the payments so credited.

**5.** If Deed is subject and subordinate to another Security Deed, it is hereby expressly agreed that should any default be made in the payment of principal or of interest on said prior deed, the holder of this Deed may pay such installment of principal or such interest and the amount so paid with legal interest thereon from the time of such payment may be added to the indebtedness secured by this Deed and the accompanying note shall be deemed to be secured by this Deed, and it is further expressly agreed that in the event of such default or should foreclosure commence with respect to said prior Deed then the amount secured by this Deed and the accompanying note shall become and be due and payable at any time thereafter at the sole option of the owner or holder of this Deed. Grantor herein hereby assigns and authorizes payment to the Grantee herein and its successors in title of any surplus funds arising from foreclosure of any such security deed.

**6.** That, as an essential condition upon which this security instrument is accepted by Grantee and relied upon in connection with the extension of credit to Grantor, Grantor shall not request or receive any additional advances or other extension of credit from the holder of any deed to secure debt to which this instrument is subordinate under any so-called "open end" provisions thereon while any part of the indebtedness secured hereby is unpaid without written approval of Grantee or its assigns. Such written approval is hereby granted to the extent necessary to protect the security position of such prior lien holder by payment of delinquent insurance premiums or property taxes.

**7.** That it will not sell the within described property, nor any interest therein, nor enter into any contract whereby any other person assumes either an additional or a substituted obligation to pay the indebtedness secured hereby without written approval of Grantee. Such approval by Grantee if granted shall not relieve Grantor of their obligation to pay said indebtedness unless said approval shall specifically so state.

**8.** That it will pay all taxes or assessments of every character whatsoever levied upon said property for which provision has not been made hereinabove or for the payment of which the monthly payments made under the terms of Paragraph 2 above are insufficient, before the same become delinquent; and that all paving assessments or special levies or assessments against said property, payable in future installments, shall be paid in full by Grantor, at the option of Grantee.

**9.** That Grantor will keep the improvements now existing or hereafter erected on the premises covered hereby, insured as may be required from time to time by Grantee against loss by fire and such other hazards, casualties and contingencies and in such amounts and for such periods as may be required by Grantee and will pay promptly, when due, any premiums on such insurance for payment of which provision has not been made hereinbefore. All insurance shall be carried in companies approved by Grantee and the policies and renewals thereof shall be held by Grantee and have attached thereto loss payable clauses in favor of, and in form acceptable to, Grantee. In the event of loss Grantor will give immediate notice by mail to Grantee, and Grantee may make proof of loss if not made promptly by Grantor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Grantee instead of to Grantor and Grantee jointly, and the insurance proceeds, or any part thereof, may be applied by Grantee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In event of foreclosure of this Security Deed or other transfer of title to the

- 5 -

premises covered hereby in extinguishment of the indebtedness secured hereby, all right, title and interest of Grantor in and to any insurance policies then in force shall pass to the purchaser or Grantee.

**10.** That he will keep said property in first class repair and will permit no waste.

**11**. Should Grantor fail to keep said property insured or in repair as provided hereinabove or fail to pay the premiums on said insurance or fail to pay any taxes or assessments against the same, including assessments payable in future installments, as stipulated hereinabove, Grantee may insure said property and pay the premiums on said insurance or pay said taxes and assessments, including assessments or taxes payable in future installments; and Grantee may make or have made such repairs as in its discretion may be necessary or advisable to protect said property; and all sums expended by Grantee for such repairs, and any amount so paid for insurance or taxes or assessments shall be secured hereby and shall become a part of the secured debt, and the entire unpaid balance of the secured debt shall, at the option of Grantee, bear interest at a rate consistent with the underlying note, interest payable monthly on unpaid balance until the amount so paid for repairs or insurance or taxes or assessments by Grantee are fully repaid by Grantor to Grantee; Grantee, at its option, from time to time, may specify and require a minimum monthly payment to be fixed by Grantee, in order to provide for the amortization and payment of said amounts so paid by it for repairs or insurance or taxes or assessments.  However, Grantee may, at its option, elect to treat the non-payment of taxes and insurance when due as a default in the performance of a covenant as defined in Item 14 of this instrument.

**12.** That Grantor will not assign the rent or any part of the rent of said premises or demolish or remove any building without the written consent of Grantee.

**13.** Grantor expressly agrees that in the event any of the proceeds of the secured debt shall be used to retire any outstanding lien or liens against the property herein conveyed, whether said lien or liens be evidenced by deed, mortgage, judgment, assessment or other form of lien, either created by contract or by law, that Grantee shall be subrogated to all the rights, powers and privileges of the lien holder or lien holders whose debt is so retired out of said proceeds.

**14.** That time is of the essence of this contract, and that if any installment due under said note is not paid when due, or if there is a default: (A) in the payment of the secured debt; or
(B) under the terms of this deed; or (C) under the terms of the loan agreement (if a conflict exists between the terms of this instrument and that of the loan agreement or other loan document, the more restrictive provisions shall govern), if any; or (D) in the performance of any covenant or agreement herein contained; or (E) as a result of any written representation made by Grantor as an inducement to Grantee to make any loans or advances embodied in the secured debt proving to be false; or (F) as a result of a substantial change in the financial condition of Grantor, or any corporation, partnership, guarantor, or other entity whose financial statements were presented by Grantor as an inducement to Grantee to make any loans or advances embodied in the secured debt, and said change in financial condition shall not have been communicated to Grantee by Grantor prior to the disbursement of loan funds or advances embodied in the secured debt; or
(G) by virtue of any federal tax lien or claim of lien for labor or material being filed of record against Grantor or the premises and not being removed by payment or bond within thirty (30) days from the date of recording; or (H) as a result of any claim of priority to this deed by title, lien or otherwise being asserted in any legal or equitable proceeding (excepting those claims or liens specified elsewhere herein as being permissible); or (I) as a result of Grantor making any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of Grantor or of any of Grantor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Grantor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should Grantor be adjudicated a bankrupt or insolvent or should Grantor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire; or (J) as a result of Grantor failing to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this deed, or in the Note, or in any of the following instruments given with respect to the Secured Indebtedness: Loan commitment of Grantee, construction loan agreement between Grantor and Grantee, or assignment of leases by Grantor; or (K)by virtue of any event occurring under any instrument deed or agreement, given or made by Grantor to or with any third

– 6 –

party, which would authorize the acceleration of any debt to any such third party; or (L) by virtue of any event of default under any security deed and agreement heretofore entered into to secure any indebtedness of Grantor to Grantee herein; Then or in any of such events, the entire secured debt shall immediately become due, payable and collectible without notice, at the option of Grantee, regardless of maturity; it being especially stipulated that any waiver by Grantee of the right to take advantage of any provisions herein by suit or otherwise shall not be construed as a waiver of such right at any subsequent time.

15. At any time the secured debt becomes due, payable and collectible under the provisions of Paragraph 14 above, Grantee may enter upon said premises, rent the same for the account of Grantor and collect the rents thereof, and may deduct from such rents all costs of collection thereof and apply the remainder to the secured debt; said rents in such case are now, in consideration of the premises, transferred and assigned to Grantee.

16. That if, at any time, the secured debt becomes due, payable and collectible under the provisions of Paragraph 14 above, Grantee, its successors or assigns, may sell said real estate, as a whole or any parcel or part thereof separately, at public outcry on a legal sale day within the legal hours of sale before the courthouse door in the county where said real estate, or a part thereof, is located, to the highest bidder for cash, after first advertising the time, place and terms of said sale or sales in the newspaper in which the sheriff of said county (where said real estate, or a part thereof, is located) publishes notices of his sales, once a week for four weeks preceding said sale or sales, all other notice being hereby waived by Grantor, and thereupon execute and deliver to the purchaser or purchasers at such sale or sales a sufficient conveyance or conveyances of said real estate in fee simple, thereby divesting out of Grantor all right, title, interest or equity it may have in and to said real estate and vesting the same in the purchaser or purchasers aforesaid. Grantee, its successors or assigns, or any person in behalf of Grantee, its successors or assigns, may bid and purchase at said sale or sales. The proceeds of said sale or sales shall be applied, first to the expenses of advertising, selling and conveying, including attorney's fees equal to fifteen per centum (15%) of principal and interest, then to the payment of the secured debt, and the remainder, if any, to Grantor, or person or persons legally entitled to receive the same. This power shall not be exhausted until said secured debt has been fully satisfied.

17. That for the purpose of renting said real estate as provided in Paragraph 15 above, or for the purpose of carrying out the power of sale herein given as provided in Paragraph 16 above, either or both, Grantee, its successors and assigns, as the case may be, are hereby constituted, and appointed attorney in fact for Grantor to act for it as above provided and rent said real estate, or in case of the sale or sales to convey the same to the purchaser or purchasers, signing the name of the Grantor to such conveyance by Grantee as attorney in fact. This power of attorney is coupled with an interest and is irrevocable by death or otherwise. All of the acts of the attorney in fact are hereby ratified and confirmed.

18. The exercise by Grantee of any rights or powers conferred in Paragraph 15 above shall not be construed to be a waiver of Grantee's right to exercise, and shall not preclude or estop Grantee from exercising, contemporaneously or subsequently, any and all rights and powers conferred in Paragraph 16 above. The rights and powers conferred in Paragraphs 15 and 16 above shall be in addition to, and cumulative of, any other remedies, legal or contractual, of Grantee for collection of the secured debt, and may or may not be made use of by Grantee at its option.

19. Without affecting the liability of any person (other than any person released pursuant hereto) for payment of any indebtedness secured hereby, and without affecting Grantees rights in any property not expressly released pursuant hereto, Grantee may at any time and from time to time without notice:

a. Release any person liable for payment of any indebtedness secured hereby.

b. Renew the indebtedness or extend the time, or agree to alter the terms, of payment of any of the indebtedness.

c. Accept additional security of any kind.

d. Release any property securing the indebtedness.

e. Consent to the making of any map or plat of the premises, or the creation of any easements thereon or any covenants restricting use or occupancy thereof.

20. No delay by Grantee in exercising any right or remedy hereunder, or otherwise afforded by law,

-7-

shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder.

21. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto (either voluntarily by act of the parties or involuntarily by operation of law), and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement, obligation and Secured Indebtedness of the Grantor shall be and mean the several as well as joint undertaking of each of them. The use of the term "it" in this instrument to refer to the Grantor shall include the masculine and feminine gender, as well as to non-personal entities such as corporations and partnerships.

22. This security deed and agreement shall be construed as a security conveyance of both real and personal property and it shall also constitute and serve as a security agreement within the meaning of, and shall create a security interest in, the Uniform Commercial Code of Georgia. Upon request, Grantor agrees to execute and deliver to the Grantee, in a form satisfactory to Grantee, such financing statements and such further assurances as the Grantee may from time to time consider necessary to create, perfect and preserve Grantee's liens upon all fixtures, equipment, rents, insurance proceeds, condemnation awards, contract rights, or other personal property herein described. The Grantee, at the expense of Grantor, may cause such statements and assurances to be recorded and re-recorded, filed and re-filed, at such times and places, as may be required or permitted by law to create, perfect and preserve such liens. Grantee shall have all the rights with respect to all the property encumbered hereby afforded to the Grantee under the Uniform Commercial Code of the State of Georgia, in addition to but not in limitation of, the other rights afforded Grantee by this Security Deed and Agreement. Grantor is a Debtor and Grantee is a Secured Party.

*IN WITNESS WHEREOF*, Grantors have hereunto set their hands, affixed their seals and delivered these presents, acting by and through their duly authorized representatives on the day and year first above written.

_____ (SEAL)
Billy Lee Long a/k/a Billy L. Long

_____ (SEAL)
Lisa J. Long

Signed, sealed and delivered
on in the presence of:

_____
Unofficial Witness

_____
Notary Public

— 8 —

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=86519637&key1=1616&key2=744&county=55&countyname=FANNIN&userid=893802&appi…     8/8